**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Applied Underwriters Incorporated, | No. CV-15-00843-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Meyer, | |
| Defendant. | |

At issue is Defendant's Motion to Dismiss ("Mot.") (Doc. 18).

**I.      BACKGROUND**

This case arises from Defendant's publishing of allegedly defamatory and disparaging statements about Plaintiff on Defendant's personal blog and Yelp.com ("Yelp"). (Doc. 1, Compl. ¶¶ 5, 12 (describing Yelp as "a website where consumers post both good and bad reviews so that other consumers can rely upon such statements in making their own purchasing decisions").) Defendant is President of Recreation Resource Management, Inc. ("RRM"), a management company for public parks and recreation. (*Id.* ¶ 7.) Plaintiff issued a workers' compensation insurance policy to RRM for a one-year period beginning May 27, 2013, which was renewed for a second year. (*Id.* ¶¶ 9-10.) In April 2015, Defendant made allegedly defamatory statements about Plaintiff and its workers' compensation insurance policies on Yelp and his personal blog. (*Id.* ¶ 11.) Plaintiff sent Defendant a cease and desist letter regarding both his Yelp and blog posts, to which Defendant responded with another blog post. (*Id.* ¶¶ 22-23). Plaintiff brings this

suit alleging that Defendant's posts constitute libel per se, business disparagement, and tortious interference with prospective contractual relationships. (*See* Compl. ¶¶ 30-55.) Defendant moves to dismiss all claims in the Complaint, asserting that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. at 1.)

## II.    LEGAL STANDARD AND ANALYSIS

Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*, *Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### A.    Libel Per Se Claim

Defamation encompasses slander, oral communication, and libel, written or visual communication. *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 183 n.4 (Ariz. Ct. App. 1985). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 848 P.2d 286, 288-89 (Ariz. 1993). "A publication which impeaches the honesty, integrity, or reputation of a person is libelous

per se." *Peagler v. Phoenix Newspapers, Inc.,* 560 P.2d 1216, 1223 (Ariz. 1977). A plaintiff need not show special harm for claims that are libel per se. *Id.* (citing Restatement (Second) of Torts § 580B). A plaintiff faces a higher burden if he is a public figure or if the statement regards a matter of public concern because he may only recover damages on clear and convincing evidence of "actual malice." *Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 567 (Ariz. 1986). Defendant argues that Plaintiff's libel per se claim fails because (1) the Complaint fails to identify a false and defamatory statement, (2) Plaintiff is a public figure or, alternatively, this is an issue of public concern, both of which requires Plaintiff to show "actual malice," and (3) Plaintiff cannot plead actual malice. (Mot. at 5-13.)

## 1.    Defamatory Statement

Plaintiff alleges that Defendant posted the following defamatory statement on Yelp: "I have managed to get myself into a scam . . . This scam comes via a major insurance company called Applied Underwriters." (Compl. ¶ 13 (quoting Doc. 1-1, Ex. A).) Plaintiff further alleges that Defendant posted the following defamatory statements on his personal blog:

> "I actually had some dead time and took all my reports and tried to regress to a formula they use for this, but I couldn't figure it out. So all the calculation on this page is just a sham, it's the mechanical wizard in the Wizard of Oz. It looks good, but does not actually directly lead to what you are billed." [(*Id.* ¶¶ 14, 16 (quoting Doc. 1-2, Ex. B).)]
>
> . . . .
>
> "I called it a 'scam' because there is a big undisclosed cost to their product that was never mentioned in the sales process, and that could only be recognized by its omission in the contract I signed . . . So is this a 'scam'?" [(*Id.* ¶ 25 (quoting Ex. B).)]

Plaintiff argues that Defendant supported his conclusions with "exhaustive investigation and fact checking," based on the following statements that also appeared on his blog:

> • "I want to thank my new agents at Interwest Insurance for helping decipher all of this. They actually flew a guy in to help me understand this policy."

- "I won't bore you with my voyage of discovery in trying to figure out how this thing works. I will just tell you the results that I have found. There are apparently other companies with similar issues."

- "I spent hours trying to figure out AU's Statements."

(Doc. 27, Opp'n to Mot. ("Opp'n") at 10 (quoting Doc.1-2, Ex. B).) Defendant contends that Plaintiff's claim fails because Plaintiff has not alleged that the above statements are false and defamatory. (Mot. at 9-12.) Defendant specifically argues that his statements are hyperbole and opinion, and thus inactionable. (*Id.* at 9.) Defendant specifically cites the following statement that he believes supports his argument that his posts were opinion: "You may have your own opinion**,** but ask yourself--When you enter into, say, a lease and have to put down a security deposit, is it your reasonable expectation that the landlord has the right in your lease to keep your deposit for 3-7 years (or more) after you move out?" (Mot. at 9 (citing Doc. 1-2. Ex. B) (emphasis removed).) Plaintiff counters that Defendant's comments, while couched as opinion, are factual allegations that can be proven true or false. (Opp'n at 9-12.)

The appropriate question is not whether a statement is a fact or an opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (noting that "In my opinion Mayor Jones is a liar" is actionable while "In my opinion mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin" is not actionable). A court instead determines "whether the challenged expression, however labeled by the defendant, would reasonably appear to state or imply false assertions of objective fact." *Yetman v. English,* 811 P.2d 323, 328 (Ariz. 1991) (citation omitted) (emphasis removed). "[C]ourts must consider the impression created by the words used as well as the general tenor of the expression from the point of view of the reasonable person." *Id.* (citation omitted) (emphasis removed). Where statements could be construed as fact or opinion, the issue should be resolved by a jury. *See Yetman*, 811 P.2d at 331; *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002).

The Court concludes that Defendant's use of "[y]ou may have your own opinion" is insufficient to take Defendant's words from factual to opinion. Defendant provided

prospective customers with facts including his payment statement, an article relating to a different litigation, and conversations he had with Plaintiff's representatives to support his claim that Plaintiff's policy was a "scam." (*See* Docs. 1-2 and 1-3, Exs. B, C.) "Scam" has a widely understood meaning, "a fraudulent or deceptive act or operation," and a reasonable person could have understood Defendant to mean that Plaintiff's policy was in fact a fraudulent scheme. (*See* Ex. B (stating that Defendant reported "[they have a] big undisclosed cost in their product that was never mentioned in the sales process"); *see Scam*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003); *see also Xcentric Ventures, LLC v. Stanley*, 2007 WL 2177216, at *3 (D. Ariz. July 27, 2007) (considering "scam" to be sufficiently defamatory to constitute libel per se). The Court concludes that Defendant's statements were susceptible to being proven true or false, and the general tenor of his posts, while voicing his unhappiness with the policy, was informative by providing the public with information they could use when deciding whether or not to use Plaintiff's services. The Court concludes that Plaintiff has sufficiently alleged that Defendant made a defamatory statement.

## 2.    Public Figure

Defendant also argues that Plaintiff is a "public figure" and therefore must prove actual malice for Defendant to be liable. (Mot. at 6.) A corporation is a public figure if it achieves "such pervasive fame or notoriety that [it] becomes a public figure for all purposes and in all contexts" or if the corporation "voluntarily injects [it]self or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.* 418 U.S. 323 (1974); *see Makaeff v. Trump University, LLC*, 715 F.3d 254, 265-66 (9th Cir. 2013) (applying the *Gertz* "public figure" standard to a corporation). When determining if a corporation is a limited purpose public figure, the Court must first determine "whether a public controversy existed when the statements were made." *Trump University*, 715 F.3d at 266. Second, the Court must determine "whether the alleged defamation related to the plaintiff's participation in the controversy." *Id.* Third, the Court must examine if "the plaintiff injected itself into the

1   controversy for the purpose of influencing the controversy's ultimate resolution." *Id.*

2   People who are "drawn into public debate or controversy 'largely against their will' in

3   order to meet charges leveled against them in the media or to respond to actions brought

4   against them, are not public figures." *Dombey*, 724 P.2d at 569-70 (quoting *Wolston v.*

5   *Reader's Digest Ass'n., Inc.*, 443 U.S. 157, 167 (1979)).

6         Defendant cites a case pending against Plaintiff, an article relating to that action,

7   and Plaintiff's nationwide advertising as evidence that Plaintiff has been involved in a

8   public controversy. (Mot. at 3, 6-7.) Plaintiff argues that its advertising did not have a

9   "direct relationship to the subsequent defamation" and that the article went to a specific

10   niche audience and does not constitute a matter of public concern.  (Opp'n at 5-9.)

11   Plaintiff's controversy with Defendant was an entirely private matter before Defendant

12   made his Yelp and blog post. Defendant admits that he did not discover Plaintiff's other

13   litigation until months after his original posts were made. (Mot. at 13.)

14         The Court cannot conclude from the record that Plaintiff is a public figure. The

15   Court first notes that mere business ownership, selling of products, and general

16   advertising does not relegate Plaintiff to this status. *See Antwerp Diamond Exchange of*

17   *America v. Better Business Bureau of Maricopa County, Inc.*, 637 P.2d 733, 737 (Ariz.

18   1981) (finding that "plaintiff's mail and telephone solicitations fall short of making them

19   'public figures'"). The Court also cannot conclude that Plaintiff publicly injected itself

20   into the underlying controversy created by Defendant. It appears from the record that

21   Plaintiff was instead drawn into the underlying public debate against its will and has

22   chosen not to use public forums to defend itself. (*See* Compl. ¶ 22 (Plaintiff sent

23   Defendant cease and desist letter, which Defendant then posted online); Opp'n at 8

24   (noting that Plaintiff has not advertised promises of benefits or perks of its plans)); *see*

25   *also Gertz*, 418 U.S. at 343 (noting the difference between an entity thrust into public

26   attention involuntarily and one who has used public attention "in order to influence

27   resolution of the issues involved").

28         Defendant also argues that his statements were related to an issue of public

concern requiring a showing of actual malice. (Mot. at 7-8.) Defendant specifically alleges that workers' compensation insurance is part of the national economy and is subject to considerable and important public debate. (*Id.* at 8.) Plaintiff argues that workers' compensation products are not the "subject of general interest and of value and concern to the public." (Opp'n at 8.) Whether speech addresses a matter of public concern must be determined by the content, form, and context reviewing the record as a whole. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* 472 U.S. 749, 761 (1985). "Speech solely in the individual interest of the speaker or its specific business audience" does not constitute a matter of public concern. *Id.* at 762. "Protection of statements about product effectiveness will 'ensure that debate on pubic issues will be uninhibited, robust, and wide-open.'" *Unelko Corp v. Rooney*, 912 F.2d 1049, 1056 (9th Cir. 1990) (quoting *Dun & Bradstreet*, 472 U.S. at 762 (internal quotation marks omitted)). Plaintiff's business peaks individual interest of a specific business audience as opposed to general public attention. The Court concludes that this is not an issue of public concern and Plaintiff need not plead actual malice. Therefore, the Court denies Defendant's motion to dismiss Plaintiff's libel per se claim.

> **B.     Business Disparagement and Tortious Interference with Prospective Contractual Relationships Claims**

Business disparagement is "the intentional publication of an injurious falsehood disparaging the quality of another's property with resulting pecuniary loss." *Gee v. Pima County*, 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980). A plaintiff asserting a claim for tortious interference with prospective contractual relationships must allege "the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) (internal citations omitted). Both claims are subject to the same First Amendment requirements, including falsity and wrongful conduct, as an action for

defamation. *See Unelko Corp.*, 912 F.2d at 1057-58 (citing Arizona and Supreme Court cases that analogize business disparagement and tortious interference with prospective contractual relationships claims to defamation claims). For tortious interference with prospective contractual relationships in particular, Plaintiff is required to plead the existence of a valid contractual relationship or expectancy. *See Antwerp Diamond Exch.*, 637 P.2d at 739-40 (noting that because the reports by the defendant could have had a dampening effect on plaintiff's sales, the element of business expectancy was met). "Although the tort of tortious interference with a business expectancy covers situations that the tort of intentional interference with a contract does not, the former has only been available in those situations where the plaintiff can identify the specific relationship with which the defendant interfered." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007).

Defendant argues that Plaintiff has failed to state a claim for business disparagement and tortious interference with prospective contractual relationships. (Mot. at 14-16.) Defendant specifically argued that because Plaintiff's libel per se claim failed to allege a defamatory statement, its business disparagement and tortious interference with prospective contractual relationships claims also fail. (*Id.*) Because the Court concludes that Plaintiff has sufficiently pled its defamation claim, Defendant's argument fails. Defendant also argues that Plaintiff has not pled an existing contractual relationship. (*See* Mot. at 15-16.) Plaintiff, however, need only allege that Defendant intentionally interfered with either a valid contractual relationship *or* a business expectancy. *See Miller*, 104 P.3d at 202. Because Plaintiff has alleged that "as a result of [Defendant's] conduct, [Plaintiff] received an inquiry from a potential customer who cited [Defendant's] statements in evaluating [Plaintiff's] workers' compensation program," Plaintiff has adequately pled a tortious interference with a business expectancy.[1] (Compl.

---

[1] Defendant also argues that his intentions were not improper, and therefore, Plaintiff's claim should be dismissed. (Mot. at 16.) However, this argument is inappropriate for a Rule 12(b)(6) motion when Plaintiff has alleged all the elements of a claim. An argument over whether Defendant acted intentionally or improperly is a fact for the factfinder to determine. *Antwerp Diamond Exch.*, 637 P.3d at 740.

1   ¶ 28.) The Court denies Defendant's motion to dismiss as it relates to his claims for

2   business disparagement and tortious interference with prospective contractual

3   relationships.

4   **III.    CONCLUSION**

5        The Court denies Defendant's Motion to Dismiss because Plaintiff sufficiently

6   pled facts that allege libel per se, business disparagement, and tortious interference with

7   prospective contractual relationships claims.

8        **IT IS ORDERED** denying Defendant's Motion to Dismiss (Doc. 18).

9

10                                    Dated this 23rd day of November, 2015.

11

12

13

14   _____
                    Susan R. Bolton
15              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28